UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:11-CV-00069-BR

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| CENTRO CELVESERA LA ZAONA, LLC dba | ) | |
| CENTRO CELVESERA LA SAONA and | ) | |
| PRUDENCIO RODRIGUEZ, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion for summary judgment. Defendants, who are represented by counsel, have not filed a response to the motion.

Plaintiff "is a closed-circuit distributor of sports and entertainment programming." (Gagliardi Aff. ¶ 3, DE # 10-1.) It "purchased and retains the commercial exhibition licensing rights to the *Miguel Cotto v Michael Jennings/Kelly Pavlik v Marco Antonio Rubio Championship Fight Program* (hereinafter 'Program') which was broadcast on February 21, 2009." (Id.) It marketed the sub-licensing rights in the Program to commercial customers, such as bars, restaurants, and nightclubs. (Id.) On 21 February 2009, private investigator Michael Sanders, upon paying a cover charge of $10, entered the defendant establishment, Centro Celvesero La Saona, and observed five televisions displaying the Program. (Sanders Aff., DE # 10-3.) "[A]t no time did this establishment ever lawfully license the Program from [plaintiff] . . . ." (Gagliardi Aff. ¶ 7, DE # 10-1.) Had it done so, plaintiff would have charged the establishment, based on its capacity, a sub-license fee of $1,000. (See id. ¶ 8 & Ex. 1; Sanders

Aff., DE # 10-3.)

Plaintiff initiated this action on 16 February 2011. Plaintiff alleges that the defendant establishment and its principal, defendant Prudencio Rodriguez, unlawfully intercepted and broadcast the Program for the purpose of commercial advantage or private financial gain in violation of 47 U.S.C. §§ 553 and 605. It seeks statutory damages of $10,000 from each defendant, "additional" statutory damages of $100,000 from each defendant, and $2830.50 in attorney's fees and costs. (Mot. Summ. J. at 1-2; Leigh Aff., DE # 10-2, at 2.)

The standard for evaluation of a summary judgment motion is well established. "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citation omitted). Although defendants did not respond to plaintiff's motion, such failure does not automatically entitle plaintiff to relief. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). The court remains obligated to "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id.

Title 47, United States Code, Section 553(a)(1) prohibits the unauthorized interception or receipt of "any communications service offered over a cable system." Similarly, § 605 prohibits the unauthorized interception and broadcast of satellite transmissions, among other things. See 47 U.S.C. § 605(a). Plaintiff acknowledges that there is some debate as to what type of interception each section covers– cable and/or satellite. (See Mem. Supp. Summ. J. at 10 (citing J & J Sports Prods., Inc. v. Fitzgerald, No. 1:09-cv-1684-WSD, 2009 WL 3681834 (N.D. Ga.

2

Oct. 30, 2009).) Also, plaintiff recognizes that defendants cannot be held liable under both provisions. (See id. (citing TKR Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001).)

Which provision applies impacts the amount of damages the court may award. For each violation of § 553(a), the court may award statutory damages of between $250 and $10,000 "as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $50,000." Id. § 553(c)(3)(B). For each violation of § 605(a), any aggrieved party may recover between $1,000 and $10,000 "as the court considers just." Id. § 605(e)(3)(C)(i). In the case of a willful violation "for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000[.]" Id. § 605(e)(3)(C)(ii). Presumably because the court can award higher damages under § 605, plaintiff requests that the court apply that provision, rather than § 553. (See Mem. Supp. Summ. J. at 10.) The difference here is immaterial because, as discussed further below, the court awards plaintiff an amount falling within the ranges encompassed by both §§ 553's and 605's damages provisions.

Based on the uncontroverted facts set forth above, see Fed. R. Civ. P. 56(e) (if the nonmovant fails to properly address an assertion of fact, the court may consider the fact undisputed), the defendant establishment has violated § 553(a) or § 605(a) by intercepting the Program without paying plaintiff a fee and by broadcasting (via satellite or cable[1]) the Program.

---

[1]While plaintiff's signal was apparently transmitted via satellite, (see Compl. ¶ 8), it is not evident how the signal was intercepted and the Program in turn broadcasted because there are multiple methods for illegally doing so, (see Gagliardi Aff. ¶ 9, DE # 10-1). Section 553 and 605 contain common elements in so far as liability is
(continued...)

3

In addition, the court finds that the statutory violation was willful and for commercial advantage inasmuch as plaintiff's programming "cannot be mistakenly, innocently or accidentally intercepted," (Gagliardi Aff. ¶ 9, DE # 10-1), and defendant exhibited the program in a commercial setting to patrons, at least some of whom paid a cover charge to enter its establishment.

In determining the appropriate amount of statutory damages, courts generally use one of three approaches: multiplying the number of patrons by the cost if each patron had paid a residential fee to watch the program; "an iteration of the licensing fee the violating establishment should have paid the plaintiff;" or, a flat amount. J & J Sports Prods., Inc. v. Brazilian Paradise, LLC, No. 4:10-cv-3113-TLW-SVH, 2011 WL 1584107, *6 (D.S.C. April 27, 2011). The court finds it just to award plaintiff the amount it would have charged the defendant establishment to sub-license the Program, $1,000.

With respect to additional damages, "[c]ourts have evaluated the appropriate amount of enhanced damages by assessing factors such as 'repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; and defendant's charging a cover charge or charging premiums for food and drinks.'" J & J Sports Prods., Inc. v. Lara Sport House Corp., No. 1:10-cv-01369, 2011 WL 4345114, *6 (E.D. Va. Aug. 26, 2011) (citation omitted) (report and recommendation), adopted, 2011 WL 4345098 (E.D. Va. Sept. 14, 2011). There is no

---

[1](...continued)
concerned, and therefore, it is not fatal that plaintiff does not have evidence of exactly how its signal was intercepted. See Fitzgerald, at *3 (noting that although the plaintiff had not determined the particular method of signal piracy, the plaintiff had presented sufficient evidence of the common elements of §§ 553 and 605 to warrant a finding of liability under either provision).

evidence of repeated violations, any promotion of the offending broadcast, or significant actual damages. However, some patrons were charged a fee to enter the establishment, and some additional amount should be awarded to serve as a deterrent to defendant and others and to reflect the detrimental effect signal piracy has on plaintiff's paying customers whose costs of services are increased significantly. (See Gagliardi Aff. ¶ 11, DE # 10-1.) The court finds it just to award plaintiff an additional $10,000 in damages pursuant to § 605(e)(3)(C)(ii).

As recognized previously, plaintiff seeks a separate award of damages against the corporate principal, Prudencio Rodriguez. "Individual liability under [§§ 553 and 605] requires that the individual authorize the underlying violations. Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (citations omitted). The only allegation in the complaint that pertains to defendant Rodriguez individually is the allegation of his being the principal of the corporate defendant, which defendants admit. No allegation concerns his participation in the offending conduct or obtaining any direct financial benefit from that conduct. The materials submitted in support of the motion for summary judgment do not contain this information either. Without evidence of defendant Rodriguez's involvement, plaintiff is not entitled to judgment as a matter of law as to his liability. The court assumes that if such evidence were in the possession of plaintiff, it would have been offered in support of the motion. The court will dismiss defendant Rodriguez from this action.

Pursuant to § 605(e)(3)(B)(iii), plaintiff is entitled to "full costs, including [] reasonable attorneys' fees." Plaintiff attorney's fees are detailed in the affidavit of Rebecca A. Leigh. (See

Leigh Aff., DE # 10-2.)  The court finds the amount of attorney's fees requested, $2322.50, to be reasonable.  As for costs, the amount sought, $508, is not adequately explained and supported beyond the $350 filing fee of which the court has independent evidence.  As such, the court will not award any amount above $350 for costs.

Plaintiff's motion for summary judgment is ALLOWED IN PART.  It is hereby ORDERED, ADJUDGED, and DECREED that plaintiff shall have and recover of Centro Celvesera La Zaona, LLC the amount of $11,000 in damages and $2672.50 in attorney's fees and costs, for a total award of $13,672.50, with interest accruing at the legal rate from the date of this judgment until paid.  Defendant Rodriguez is DISMISSED.  The Clerk is DIRECTED to close this case.

This 1 November 2011.

                                         W. Earl Britt
                                         Senior U.S. District Judge